And move to our next case this morning, United States against Dukes. Mr. Bainzaint. Morning, Your Honor, and may it please the court. I'd like to start the conversation today by picking up on a thread that Judge Scudder, you started in the first argument this morning, and I think Judge Kearse picked up on too. This is another case in which we have a full jury trial. This case has been, it's gone to trial, it's gone to verdict, and we're up now talking about sufficiency of the evidence. So what I'd like to explore a little bit is through the lens of that, the evidence in this case. Judge Scudder mentioned earlier on that this is often described as a nearly insurmountable burden, that's true. But the reason is because most arguments on insufficiency of the evidence focus on what rational jurors can and can't do. This is not a standard that we give straight to the jury and we apply minimal review on. What we have to talk about is what does rational, in this case, has the government provided rational reasons for the conviction? Has it told a story that holds together? And as part of that, the government cannot make speculative leaps. There can't be conjecture. This is a case that's all about circumstantial evidence. And what we have here is a case that's built on conjecture. It's built on speculation from beginning to end. So starting at the end- I don't know a strong argument could be there's direct evidence given those Facebook posts. Well, and that's a great question, Your Honor. So the Facebook posts themselves talk about Grand Theft Auto in general. What the government hasn't done is connected that up with the actual case. And that's what we call carjacking. Now, remember, we've got three separate incidents in this case. We have the carjacking itself. About three or four hours later, we've got the park shooting. And about five hours after that, we have the chase with the police and the crash. Now, the government points to these Facebook posts and says the only rational explanation for those posts is that Mr. Dukes was carjacking someone. That's not necessarily true because when you look at the context of the posts, he talks specifically about running from the police. He talks about being chased. He talks about being in a car accident in the text back and forth with his girlfriend. He also says, lost my phone, left pipes, IDC, which I think means I don't care. Long ass guy, I got away. And that's absolutely right, Your Honor. He lost the pipes. He lost his phone in the car that he carjacked. Well- He left the guns in the car that he carjacked and he got away after the police chase. Let me push back on that, Your Honor. So the phone was left in the car at the crash. That doesn't say that Mr. Dukes must have carjacked the car 12 hours earlier. It does tell us that Mr. Dukes was likely in the car at some point. That's conjecture to say that it must inevitably prove that he was the carjacker. Same thing with the lost pipes. Let's assume for the sake of argument that, in the light most favorable to the government, that that does mean guns. Where are those guns? We know that one was recovered from the car, did not have Mr. Dukes' DNA on it, did not have Mr. Dukes' fingerprints on it, and in fact was in the passenger seat where there was DNA for someone who was not Mr. Dukes. So I think it's a stretch and quite a conjecture and speculation to say that it must and can only mean that he must have carjacked someone when we've got this additional evidence of the accident and so on and so forth. But I take your point, and that's part of the problem here. It's easy to point to something the government has or an argument the government says, but we're not talking about the government's arguments. We're talking about what the facts are. You gotta also account, and you're probably coming to it, Mr. Van Zandt, for the fact that Angelica Rodriguez identified the defendant as one of the people that perpetrated the carjacking and was subject to cross-examination on the reliability of that identification at trial. And that's an interesting point as well, Your Honor. If you recall from the transcript, Angelica actually did not identify Mr. Dukes at trial. She never pointed- I thought there was a pretrial photo array or photo book or something. Correct, so that gets into the question about Dr. Wickstead's testimony. So the issue here is, to set the timeline right, the incident occurs in July. The first time that Angelica gives a description is at the scene about five minutes later. This is actually on video and was introduced during trial, where she describes the carjacker as having a full beard. Now, we also know from the evidence, and it's undisputed, that Mr. Dukes didn't have a full beard that day. We've got those photos in the record. And that's something the government's never been able to push back on. So coming to the identification itself, we also know that she was shown, I think, 24 photos overall in Texas, March of the next year. So we're talking about, excuse me, August of the next year. So we're talking about a month. And then the second identification was in March. So the point is, in the first identification in August, she identified four different people as, eh, looks familiar. Mr. Dukes was one of those. She certainly didn't say, that's the guy. Now, the second identification, second photo pack about eight months later, the only person whose photograph was in that six pack was Mr. Dukes, despite the fact that she'd said three other people in the initial identification looked familiar, looked like the carjacker, might wanna see them. So the question is, what do we do with that? And- All that was submitted to the jury, right? Yes, of course, Your Honor. And I take your point that, yes, the jury did see this, but we wouldn't have appeals if we just said the jury can see it and decide. No, I know, but the question is, does it go to weight or admissibility? That I think is a separate question, Your Honor. I think it goes to weight, and that's because of the way this was set up. But the point of the fact is, we've also got indisputed testimony from Dr. Wickstead about how memory works. Yeah, but even if the eyewitness identification here wasn't perfect, which I think is the point that you're making and the jury could conclude that she identified the wrong man, you then got the Facebook messages with his, I suppose, his child's mother, when he writes, bitch, I was in an effing, you didn't use the word effing, I'll just say that. He was in an, I was in an effing accident and almost got locked up for two pipes. I lost my phone. I lost my phone. I was in a high speed. You're absolutely right, Your Honor. And my point as to that- That doesn't mean that he committed the carjacking. That's exactly it. And that's the problem here is the government easily makes that leap. That's fine. But the jury did too. But that's argument, Your Honor. And my point is, there has to be a connection. They've got to connect it up. The jury can certainly make reasonable inferences from the evidence. What it can't do is speculate. What we have based on the Facebook posts, and you're absolutely correct, we have a high speed, we have lost pipes, we have a lost phone. None of that has anything to do with the carjacking 12 hours earlier. So while I would agree that that's sufficient for finding that he possessed, or he was part of the gun, excuse me, in the car at the time of the accident, left his phone, et cetera, et cetera, that doesn't move the ball on the carjacking. And that's the problem here with sufficiency of the evidence. We cannot conjecture. We cannot speculate. That's what this court has said. What about his posting of a Facebook photo of himself with connecting the shooting to the funeral of a friend? I'm glad you brought that up too, Your Honor. Gray hoodie with the purple ribbon from the funeral in the car. So for context, what we're talking about is there was a funeral for Mr. Dukes's friend that day about, I think it was noon. Everyone wore purple ribbons to commemorate him. The government's theory is that Mr. Dukes stole a car sometime that afternoon so that he could commit a shooting in memory of his friend and then posted, we did it for you. That's the theory. Now, the problem with that is it's all speculation. All we know is there was a sweatshirt found with a gray sweatshirt found with a purple ribbon on it in the car. That tells us that, let's assume it was Mr. Dukes, just for the sake of argument, it's in the light most favorable to the government. That tells us that Mr. Dukes was in the car at some point. The interesting part, none of the carjackers were described as wearing a gray sweatshirt with a purple ribbon on it. The only inference then is that had to enter the car at some point after the carjacking. So even in the light most favorable to the government, all that tells us is that Mr. Dukes was in the car and left his sweatshirt at some point after the carjacking. Reasonable inferences to be drawn from that evidence that he was involved in the carjacking. I mean, what you're making is essentially a jury argument and the jury rejected it. Well, no, Your Honor. What I'm pointing out is that the government actually does not have any evidence to connect the two. Because we can certainly say it connects it to the carjacking. The only fact is that the sweatshirt was found in a car that was stolen. Very serious coincidence. Not necessarily, Your Honor. I mean, I think a- This is a classic jury argument that it's too coincidental that all these things would converge and not point to your client. Not necessarily, Your Honor. And I think we can craft a timeline that actually makes a lot of sense. Carjacking occurs, car shooting occurs, someone drops off the car, Mr. Dukes ends up in it at some point and happens to be the last person playing musical chairs. Right, but the government's theory and timeline is quite reasonable under the circumstances. But is it supported by the evidence, Your Honor? That's the issue. Well, but the other, what the jury was told, you're not given the full picture of what the jury was told. The jury has, a Ruger firearm is found in the car. There were shots fired in the park from that Ruger firearm, right? And Mr. Dukes, your client is saying, I lost two pipes, almost went to jail, et cetera. And the whole government's theory was that your client committed the carjacking in order to commit the shooting for D. Nice, his friend. Right, that's the whole, that's the government's theory. That's how they connect the dots. And sure, there is an inference that the jury has to make that he committed the carjacking to do the shooting, but the evidence sort of on the back end is so strong. I think that it supports the eyewitness identification on the front end, if that makes sense. Let me push back on two points on that, Your Honor. So first of all, you mentioned the Ruger. The problem with that, connecting that up to the carjacking, let's say at most it connects into the park shooting. There wasn't, there was no testimony that there was a Ruger at the crime scene. Angelica was very clear. That that was a Glock. No question. So if we're talking about Mr. Dukes had a Ruger, Mr. Dukes had a Ruger, that necessarily precludes him from being the person that had the Glock. If we take that for what it's worth. I don't think they were talking, the victims of the carjacking weren't talking about the brand of the gun. They were saying somebody pointed a black gun at me and a black gun was found in the car. No, Your Honor. We actually got into that in a lot of detail on Angelica's testimony. And we specified that it was a Glock versus a Ruger. The reason it was important is one has an internal hammer and the other does not, which makes them very easy to identify. Angelica did talk about that. Did the Angelica's mom or aunt or somebody, wasn't she one of the victims? Yes, Your Honor, Sarah. She did not have any identification at all. Neither did Isabella, who was the other person in the car. And in no state, I thought, didn't one of them make a statement at least there was a black gun pointed at us? Oh yes, that came out. But in terms of the identification of the person, they didn't have anything related to that. Okay, but one of them said black gun and lo and behold, a black gun's in the car. I mean, how many black guns are there out there,  I mean, that's quite a reach. What Judge Kirsch is saying is when you combine it all together, a jury operating under the standard of review that we're reviewing this could say, I mean, you start to rule out coincidences at some point in time here. Well, and that's the issue, Your Honor. Let me actually get back to one of Judge Kirsch's points before I go on. Talking about the park shooting and that it was in revenge or in memory of his friend, Daryl. Daryl died of epilepsy. He wasn't shot. He didn't get killed by rival gang members. So for that to be true, the only possible way you could get there is by saying, Mr. Dukes is the kind of person who shoots up parks when his friends die, regardless of the reason. That's not logical. That's not rational. It was the defendant, not anybody else. It was the defendant who said, D-Nice, it's your day. We did it for you. Yeah, his funeral, Your Honor. So what, put the funeral on? Absolutely. And that's the problem is that the government has not, they take this argument as far as they can. And I will agree. That's a fine argument to make. The question is evidence. What is the evidence that that's what he's talking about? And why would he be saying something like that when his friend died of epilepsy? There's no evidence to support that. Only a conclusory argument based on character. That's the problem here, Your Honor. And I completely agree that when you look at the arguments, it makes sense. But when you look at the evidence the jury had in front of it, you can't rationally connect each point to the other. And that's the standard of review. I'm way over my time, unless there's any other questions right now, I'll yield to the government. Thank you. Is it Vysovich? Ms. Vysovich, may it please the court, Jasmina Vysovich on behalf of the United States. Your Honors, ample evidence supported the jury's guilty verdicts here. Along with the DNA and the cell, and along with defendant's DNA and his cell phone found in the carjacked Equinox next to one of the victim's cell phones and next to a black firearm. There was other evidence that connected the defendant to the carjacking. Defense counsel or opposing counsel relies solely on Angelica's second lineup identification, but that's not the only evidence from the victims that supported that the defendant was the carjacker. There was a defendant matched to the description of one of the carjackers, both in appearance. And we know that from Isabel's testimony, one of the other victims and from Angelica's testimony. And that appearance was six foot tall, thin, but fit black man. And that is consistent with what his driver's license showed and what the jury saw at the defendant's table. He also matched the appearance of one of the carjackers in clothing. So we know, so Isabel said that one of the carjackers was wearing a red shirt and saggy blue jeans. And Angelica said that one of the carjackers was wearing a blue shirt with some sort of design on it and red, orange skinny pants, essentially. And clearly the reasonable inference there is that Angelica flipped those colors. And defendant posted a picture of himself when he talked about doing it for D-Nice, wearing a red shirt and saggy blue jeans on the night of the carjacking. And then, as your honors have mentioned, not only did we have that he was consistent in appearance, that his DNA was in the car, that his cell phone was in the car next to Angelica's cell phone, we also have his statement, which were an important piece of the case here because they're defendant's own words. And in particular, the day after the carjacking, the defendant bragged about doing it. He said, I was playing grand theft auto. That is a reasonable inference for the jury to make that the defendant, amongst all the other evidence, admitted to committing the carjacking. So it's simply not true that the only identification here was Angelica's second line of identification. There was more than sufficient evidence to find that the defendant was guilty of the carjacking. And as your honors mentioned, everything that defendant argues in his briefs about the unreliability of Angelica's lineup identification or whether that second lineup identification should have been done differently was all presented to the jury through not only the closing and argument, but also through the defense expert, extensive cross of Angelica and other witnesses. And yet, despite all of that, the jury returned a guilty verdict. One point on the Glock versus Ruger point, the victims in this case were a 17-year-old teenager, Isabel, and a 20-year-old, Angelica. Neither had extensive gun training at that point. They both stated that there were black guns that looked like Glocks. A reasonable inference is that a Glock is a pistol. You know, that's a common phrase or a common brand of gun. We also had in the case, a significant case agent testimony that explained how Rugers and Glocks are very similar looking. And the only, really the only difference was the existence of a hammer, which would not have been visible to a victim who was staring at two black guns pointed at their face. So the existence of the Ruger pistol in the Equinox the day after the carjacking is further evidence that Dukes was, excuse me, that the defendant was the carjacker. And in terms of the 404B, the district court was well within its discretion in admitting evidence about the park shooting. The park shooting was probative to prove defendant's motive and identity as the carjacker and to prove that he was a loaded and operational gun at the carjacking, which helped prove one of the elements of the carjacking offense. And specifically, the government had to show that the defendant intended to cause death or serious bodily harm when he took the Equinox. And one of the ways that the government did that was to show that the gun was loaded and operational just a few hours after the carjacking when it was used at the park shooting. The park shooting was also direct evidence of defendant's possession of the Ruger pistol found in the crashed Equinox. And the probative nature of the park shooting was not substantially outweighed by the risk of unfair prejudice. Here, as your honors know, the evidence regarding the park shooting was significantly sanitized. There was no mention of anyone being shot. There was no mention of this being a gang shooting. The jury did not hear any of that. Instead, they heard very limited evidence that a few hours after the carjacking, there was a park shooting in which case, in which the Ruger was used to shoot 14 shots and witnesses saw an Equinox leaving the scene. And at closing, the government significantly limited the references to the park shooting to motive and identity of defendant as one of the carjackers and proving that the gun was loaded and operational as one of the elements of the carjacking itself. And again, going further down the 404B analysis to the 403 analysis, the limited evidence of the carjacking was not unduly prejudicial when compared to the evidence the jury heard of the violent and traumatic nature of the carjacking itself. So as your honors are aware, this was the jury heard evidence that a 40-something-year-old mom and her two teenage daughters, a 17 and a 20-year-old, and their seven-month-old baby were carjacked in the middle of the day when they were dropping off food at a barbecue. The jury heard how two men with two guns pointed at the victim's heads, tried to steal the Equinox and that the victims frantically tried to get that baby out of the car. And the jury heard all of that. They saw all three women on the stand. They saw the women get emotional as they recounted these events and talked about the trauma they incurred that day and the trauma that they still incurred up till the day of the trial because of how traumatic and violent this incident was. And then finally, the judge in this case gave two limiting instructions as is instructed by Gomez to further reduce the prejudicial nature of this evidence. One, before any evidence of the shooting came in, the court told the jury that defendant had not been charged in the shooting and that they may only consider the evidence to determine whether defendant participated in the carjacking and whether he possessed the gun. And at closing, the judge again instructed the jury to only consider that evidence for those specific reasons. Given all of these facts, the district court did not abuse its discretion in allowing the jury to hear the limited evidence presented regarding the carjacking. And if there are no further questions, the government asks that this court affirm the district court's judgment. Thank you. Mr. Van Zandt, your time had expired. If you have a brief rebuttal, I'll give you a little bit of extra time. Just two points to wrap up, Your Honor. And I think that what I wanna point out is that the government said the jury heard it, they heard all these arguments. That's true. But that's not the end of it. And if the standard review means anything, we don't stop there. The problem is with the government's position, anytime there's evidence that doesn't fit the government's theory, well, the witness just made a mistake. Angelica testified it was a Glock, but it was really a Ruger. She just made a mistake. No evidence for that. Angelica must've flipped the colors of the person, flipped the red and blue shirt. She must've just done that because Mr. Duke's happened to be wearing a red shirt that day, but that doesn't fit the government's theory. So she must've just made a mistake. That's not the government's burden. The government's burden is to connect up every single piece of evidence so that we can rationally make a conclusion to the next one. That's what I'm talking about today. And that's what I asked the court to consider as it reviews this case. Thank you. Our thanks to all counsel. We'll take the case under advisement.